Oh, yay. Oh, yay. Oh, yay. The Honorable Appellate Court Fifth District State of Illinois is now in session. The Honorable Justice Bowie presiding along with Justice Gates and Justice McCain II. The first case this morning is 5 21 0153 People versus Bennett. Arguing for the defendant appellant is Levi Harris. Arguing for the state is Chelsea Nielsen. Each side will have 10 minutes for the argument. The appellant will also have five minutes for rebuttal. Please. Not only the clerk is permitted to record these proceedings. Good morning, Counsel. How are you this morning? Good. Good. Mr. Harris, you ready to proceed? Sure. Go right ahead. Your honors. As you said, I'm Assistant Defender Levi Harris, and I'm here this morning on behalf of the appellant, who's my client, Eddie Bennett. May it please the court. Eddie to the introduction of evidence all the way through his sentencing hearing. His trial reads like an issue spotting exercise from a law school final. In the interest of time, I'd like to zero in this morning on the second issue from our briefs. However, I'm happy to answer the court's questions about any of the issues, and I want to remind you just quickly that there are three of them. First issue, the state deprived Mr Bennett, who is a black man of his origin, by striking the only black potential juror from service and trying to justify that strike by misstating the record by signing a reason that applied just the same to a white woman who made it onto the jury and by failing to ask the black veneer man any questions about what it what the state said it was concerned about. The second issue that I want to get to in a moment is that the trial court denied Mr Bennett his right to a fair trial by allowing the state to introduce minimuses to the jury for Mr Bennett's decades old drug convictions and by letting the state question a detective about his prior official involvement with Mr Bennett. The third issue is a sentencing issue in the abuse of discretion issue where Mr Bennett was sentenced to 20 years in prison as a class X offender for three one hundredths of one gram of heroin. Let's zero in on issue to the denial of Mr Bennett's right to a fair trial. This took place in two different ways through the introduction of minimuses from decades old drug cases and through the detective's testimony about dealing with Mr Bennett several occasions before. Counselor, are you saying that the introduction of the minimus itself was error or is the minimus permissible if otherwise relevant? Your honor, I would say that it is it is an error, but it is not the entire error. Um, there are several several layers of this onion. One of them is that the state's attorney did not seem to understand the difference between other crimes evidence which can come in sometimes not for propensity, but to he didn't understand the difference between that and prior convictions, which, as we know, only come in to impeach the defendant or sometimes they come in for other witnesses, uh, only on the issue of credibility. In this case, the judge did separate those, right? The trial court separate them in which way? Well, the trial court in the trial court reserve on a possible Montgomery issue and proceeded on the 404 B analysis. Your honor, that is correct. However, what the trial court permitted the state to do and what the state went ahead to do was to present and it had said it was going to admit convictions on this 404 B. Um, matter this other crimes matter, which even in and of itself would have been an error. But then when it got to actually introducing them, it introduced not certified copies of conviction, which would happen if this were if this had been proper under the other analysis with the Montgomery, but introduced these minimuses, which had the additional prejudice of telling the jury the classification of the offense that Mr Bennett had been sentenced to and what his, uh, prescribed, uh, prison sentence was going to be, which we know notices would have been redacted and taken out the length of the sentence. Would they? Would that have been a permissible way to show proof of a prior conviction? We are proof of prior convictions under this was were not proper at all. There is nothing that I've seen in the rules of evidence or in case law that permits other crimes evidence to come in in the form of conviction. So no, it would not be permissible under this. And these crimes, which happened, you know, some of them Mr Bennett. And I think the court pointed out that some of these convictions were older than the state's attorney, which is fine. But those couldn't have come in under Montgomery because they were certainly older than 10 years. So, you know, those couldn't have even come in if Mr Bennett had testified and the state's attorney had tried to get them in as prior convictions. Then we would just be dealing with, well, we've got a Montgomery issue and the state's attorney didn't do it right by putting in minimuses. And so that may be an open question in a different case. Can we redact the minimuses and submit that instead of certified copies of conviction for a Montgomery issue? Uh, but to show other crimes evidence, you have to show at least some threshold similarity between the other crimes. What happened in those cases and what is alleged to have happened in the present case, because that's the only way the jury can determine whether there's a relevance to those things. And, you know, they're instructed to do that. At the end of the thing, they're instructed to consider, you know, what way, if any, to give these prior crimes on the issues of what they were admitted, which they were told here that they were admitted for prior convictions can only be considered for credibility. And then the very next sentence is evidence has been received that, uh, he participated in these other crimes and that's on knowledge and intent. Well, first of all, the only issue or the only evidence that he participated in any crime was these improper minimuses. Second of all, uh, by telling the jury, well, this is about evaluating Mr Bennett's credibility. He didn't even testify. So, you know, what is that even in there? How is that, uh, you know, the state says in its brief, well, this cured any error. It only compounded the error and certainly would have confused any jury that was trying to take the instruction seriously because they tell them to do two different things. That was a very long answer to your question, Justice McCain. But fine, fine, go ahead. Um, so I think we touched on some of this through, but the other crimes evidence was irrelevant because we don't know what the threshold, we don't know what Mr Bennett was alleged to have done, what actions he was taken. We know a crime that he was charged with and indeed was convicted of, but we don't know what the facts of those cases were and whether they were similar to this case. Uh, we know that the state hold the jury. You're going to hear that Mr Bennett has done this before, said that an opening statement and then in closing statement, you know, call him a convicted heroin dealer. Um, hold the jury. What are the odds that, you know, you're going to find a convicted heroin dealer standing next to heroin. So even after the state attorney had disavowed any use of this for propensity, that's precisely what it encouraged the jury to use it for in argument. Um, and the state also hammered the length of the sentences when it was talking to the jury in closing argument. Well, you know, Mr Bennett would have been sitting in prison for X amount of years on this prior charge. Well, that's not permissible in any instance. I mean, there's a jury instruction where you're not to concern yourself with any possible sentence of the thing that the defendant's on trial for. Uh, in this case, they're putting in all these other sentences from something that happened, you know, 25 and 30 years ago. Uh, this error, this part of it, uh, was also fully preserved. Defense counsel, uh, objected to it before trial in, you know, when there was a hearing on it, defense counsel, you know, reminded the court that, look, we've had a hearing on this. I don't agree with this and put something in a post trial motion about the impropriety of this. So because it's fully preserved, the state bears the burden of showing that this error was harmless and it can't do that here where the only evidence of guilt, uh, was really coming from this man, Mr Frazier, a confidential source who admitted sometimes he was high when he did these buys. Um, he had done this multiple times where the Mount Vernon police over the years made probably $1500. He was getting paid in this instance. He used the money to buy more drugs. This was a business for Mr Frazier and he got a more lenient sentence for what he was facing. I think it was an escape charge for his testimony in this case and for participating with the police. Um, the state says in this brief, well, you know, the whole buy is on on tape. It's not on tape. There's no exchange of money or exchange of drugs caught on the tape. It's a very shaky tape and your honors can watch it. It's certainly not going to be up for an Oscar next year, but it would have a informative effect for the court to read that. I see that I'm about out of time. If you have other questions, great. And if not, I will come back for rebuttal. I have a quick little question here. I note in your brief you uh uh commented on the length of time that the attorney and the judge uh had uh been in their respective positions. I guess implying that they were not qualified or experienced enough to handle these complex issues. Your honor, I think that is, I think two things about that one for in commenting on the assistant state's attorney's length of service. The point was, I don't think there was any malice in him doing this at all. I don't think there was any intention of, oh, I'm going to pull a fast one and we're really going to deny Mr Bennett his right to a fair trial. Uh, I think this was, he was two years out of law school. He's sent in to try a case that's got a potential 30 year sentence and he sent in all by himself. Perfectly understandable. Counselor, here's my question. I've only been on the appellate court less than six months. Am I qualified to hear this case? Your honor, I think you're qualified. Certainly you're qualified. The question would be if, if you, if the, if the Illinois Supreme Court, God forbid, should reverse a decision that you wrote, uh, would it be the case that this was, you're just completely bad at the job or could it be you're learning and you made a rookie mistake? Not saying that you would, but that's what I'm saying. It's not about qualifications. Certainly if you've got a JD and you have got, you passed the bar exam, you're qualified to go in and try a murder case if you want to, as far as, uh, the laws of the state of Illinois are concerned. But you're also, I think, more likely to make a mistake in those first years. Certainly I was for a long time and still do, uh, than you might be if you'd been at it for a while. And I think that was our point with, with the trial court, that the trial court has been doing this way long enough to have known that that shouldn't have happened. And whether he just thought, well, you know, we're going to see what happens here or try something new. I don't know what was going on. Certainly not a qualification issue. It's an error issue. All right, point taken. Thank you. Well, Mr Harris, obviously you'll have your time for a little, and I commend you on your answer to that loaded question. Miss Nielsen, are you prepared to proceed? I am, Your Honor. May it please the court counsel Chelsea Nielsen on behalf of the state. Your honors, the state does not believe that the defendant has raised any colorable arguments which would necessitate this court ordering a new trial. It's life dictated by drugs, but he chose to break the law. He was correctly found guilty by a jury of his peers, and this court should affirm the ruling of the lower court. And unless this court has any specific questions it would like to raise right away, I'll jump straight into my response to Mr Harris's argument thus far. Your honors, the admissions of certain evidence falls under an abuse of discretion standard. The Illinois Supreme Court has repeatedly held the other crimes is admissible if it's relevant for any purpose other than to show the defendant's propensity to commit crimes. It's People versus Wilson, 214 Illinois 2D 127. It's discussed in the people's brief on page 16. Other crimes evidence is admissible to show modus operandi, intent, identity, motive, or absence of mistake. The trial court in this case expressly stated that it did not believe the evidence was unduly prejudicial and was relevant to proving both knowledge and intent in this case. Facts of prior convictions would be retrying the defendant as Mr Harris's has raised in his argument that these prior convictions came in and the jury was told about them, but they weren't given any facts of those convictions. That would be improper. The prior convictions were Miss Nielsen, isn't it also improper to put in the amount of the sentence that was given for that prior conviction? Your honor, that is an interesting admission of evidence. However, I don't believe that if it was error, it was anything but harmless because those documents were would not necessarily be something that a lay person would understand. Additionally, the jury was also given instructions at the closing of the trial, telling them for what purposes they could consider the prior convictions. Why wouldn't the state redact the irrelevant information from the minimus? Your honor, I don't really know. I can't speak for the actions of a different individual. Um, sometimes these things just happen. And then the question is, was the error substantial or was it harmless? And in this case, the state would argue that it would be harmless given that the how do you meet that burden of proof since it's the state's burden on a fully preserved air? Your honor, I believe that in doing a harmless error evaluation of the case, you have to review the evidence that was presented the including the instructions that were given to the jury at the close of the trial, as well as, um, looking at the document itself. Of course, the totality of the evidence in this case would come into play. Um, and in this case, the state obviously does not believe that it was prejudicial to the overall outcome of the trial. In this case, this wasn't merely limited to evidence of other crimes that the individual had previously committed. There was substantial evidence presented in this case. Now, I know that the individual who helped with the controlled by has been raised already in this instance. Um, he was not a secret entity of the state. The state provided the jury with the information that this individual had his own background. He did benefit from the controlled by. But in addition to that, there was also testimony from two police officers who observed the controlled by who helped implement it and who were able to observe the exchange between the defendant and the individual. In addition to that, um, there was identification of the defendant as the individual who did the controlled by. Um, the entire drug exchange was captured on video. I'll agree with Mr. Harris. It's not gonna get nummy, but it is evidence. It is relevant. It was considered by the jury. Um, I'm sure we would love if we had some better videography in a lot of our cases, but we get what we get. Um, in addition to that, there was a lab report from the Illinois State Police showing that it tested positive for a controlled substance. It was heroin. Um, Detective Jackson identified the heroin exchanged between the defendant and the confidential informant. There was also the defendant being identified by Detective Smith, who was present on the controlled by. Um, and so on top of all of that, the jury was also provided the evidence of the defendant's prior convictions to further show his knowledge and intent in his actions in this case. But there's no basis to believe that absent these alleged errors, a different verdict would have resulted. If any errors were made, then the limiting instructions by the trial court were sufficient to cure any erroneous remarks that would have been made by Detective Jackson or by the state as, um, defense counsel has previously raised. Nor is there any indication that the minimus documents that were provided to the jury were prejudicial. Are you taking the position that a lay person can't understand the wording of a minimus? Not necessarily, Your Honor. No, I don't want to speak for, um, different people's knowledge bases. However, I do think that in instances when individuals who are not familiar with the legal process are given legal documents, some of it might not be relevant to what they're considering. It might not be something that they consider to be relevant. Um, and so while there was evidence of the individual's other crimes, I don't believe that those documents outside of providing that proof to the jury would have swayed the outcome of the case one way or the other. Well, counsel, the state's attorney even argued, let alone the length of the sentence was on the minimus. The state's attorney argued the defendant got 12 years on one conviction. Doesn't that obviously conveyed to the jury? This is a bad guy. Propensity. I don't think so, Your Honor. I think it's been established that this individual has a drug problem. There's I don't think there's any denying that, um, in any instance. Um, plus those were comments made by the state's attorney in closing argument, which is not evidence. And so again, we look to the jury instructions given at the close of the trial, and the belief is that those correct any errors, which may have been made by the state's attorney in closing arguments. And unless the court has any other questions for the state, I would rest the remain of my argument and rely on the people's brief, which was already been submitted. Thank you, Miss Nelson. Before we move on, Justice McCain here, Justice Page, do you have any questions? No further questions. No further questions. Thank you, Mr Harrison. Go right ahead. You're on. You're muted at the moment. First of all, if she's not gonna use that two minutes, I might hop on it if nobody else is. Um, I want to say arguments. I might allow it early morning. Uh, the first thing I want to say is, I think I heard, uh, counsel say that there were some things in the minimuses that were not relevant. And I think that's exactly part of our point. So if your honors heard the same thing, I think that's a significant concession. Counsel also just said that, you know, the jury was instructed properly, and that should have cured any error from the state's attorney's instruction or excuse me, arguments that may have been improper. The instruction to the jury is that arguments are not evidence, and any argument not based on the evidence should be ignored and not considered. In this case, the state attorney's argument, unfortunately, was based on quote unquote evidence because these minimuses had been moved into evidence. Once they were allowed in, they were fair game for the A. S. A. To comment on, which is exactly what he did. So the jury wasn't going to ignore, uh, the sentences, the classifications, etcetera in these minimuses because they were already part of the evidence that the jury was being asked to consider. Uh, counsel said at one point, well, she's not here to speak to what another person may have done. I think that's exactly what she's here to do, which is to justify or explain the trial state's attorney's, uh, actions and explain whether or not they amount to error and whether or not they amount to reversible error. Um, I disagree as we did in the briefs that the police saw the controlled by or observed the whole thing. I think counsel said, uh, or that the whole thing was recorded on tape. It's just not there. Your honors can look at it or make your clerks look at it or however that works. That's fine. It's not on the video. The only thing that we have that says that a transaction took place in this case is the word of a confidential source with a lot of reason to lie and a big history of drug problems and addiction himself. Uh, the state said that Mr Bennett had a long history of drug addiction or drug problems. Perfectly, perfectly true. I think that's why Mr Bennett sought drug treatment during the pendency of this trial. But the fact that he had, uh, had a long history as a drug addict and a drug user is not the same as the uh, one of the one of the minimus is one of the copies that looks like it came from a common law record. It's not even clear that it's for a delivery case or, or, uh, a possession with intent case. It just says possession. So again, I'm not saying that that's been intentionally misrepresented, but the idea that these, uh, these things were harmless just because the jury already knew he was a drug addict is kind of absurd. Um, nobody is questioning that other crimes evidence can come in. So let's say in this instance, the state had come up with a police officer who had been there for those prior crimes from years and years ago or a witness who had been there or in the absence of that, I'm not going to concede that it would have been acceptable, but the state could have even brought in if those witnesses were dead or unavailable, could have brought in transcripts from those prior trials to show what the details of those crimes were. And then you could have a proper other crimes, uh, hearing before trial and talk about whether the remoteness, uh, in time as one factor would prohibit those from being used at trial. That's not what happened here. Uh, there was a proper way to at least try to move other crimes evidence, uh, and get it before the jury. This was not it. Um, Mr. Harris, you're not conceding, though, that the 1983 convictions should come in. No, no, absolutely not. I'm saying if the state wanted to put it in, there was a way and a process that it should have followed. And in this case, whether that could have come in or not is something we don't know and can't know because the state didn't put on the kind of evidence that would have allowed us your honors to evaluate whether that was properly in, uh, either. There was a question about why did the A. S. A. Not redact the length of the sentences because he wanted to use the length of the sentences. As Justice McKinney pointed out, that was part of his argument. So that, of course, it wasn't redacted. The final thing that I will say is, Council said that Mr Bennett was convicted before a jury of his peers. That points back to the Batson issue. When I say one of his peers, the only black peer that he had in the room at the beginning of this process was excluded. Thank you, Mr Harris. Before we let you to go, I know we'll see you later. But Justice McCain here, Justice Page, do you have any final questions? No. Just one quick one, Mr Harris that on the Batson issue from reading the transcript, it looked it appeared to me that the trial court was actually reading out of a bench book on the procedure to be used on a Batson challenge. And it looked like to me he did everything right. Well, Your Honor, that was also my impression that that was coming from a briefing book. And I think he excused himself at one point to go and look at the or not the briefing book, a bench book. Um, I think there's no question for that second, that second prong of Batson that the state's burden and we talk about this some in the briefs as well, the state and I both the state's burden after a prima facie case has been shown is to come up with some race neutral reason. And at that point, it doesn't have to be a reason that makes sense, etcetera, which is what Judge Kreisel was commenting on. But that's just the bare minimum to put on some evidence that to get the state who a third stage evaluation of whether this that's where that's where the trial court would evaluate. Is this genuine? Does this make sense? Is this rational? Etcetera. So I think it's a question of I think Judge Kreisel was absolutely correct in signing this. It's a good case law. It's just second stage case law. And that's the bare minimum for the state to do. Once you get to the third stage of Batson, you do have to evaluate the reasonableness and the things of of the state's proffered reason. All right. Thank you. I think it would be fair given that Mr Harris got to address that Batson issue short in a short bit. If I give Miss Nielsen, if you want to respond, make a brief response to what Mr Harris said. I think that would be fair if that's okay with just McCain and just states. Yeah, that's fine. Uh, thank you, Your Honors. Um, in response to the Batson issue, I believe that Justice McKinney is correct and that the trial court did properly follow the case law and set out its three stages for addressing each part of the Batson hearing. That would be the prima facie case. Um, the not the non biased rationale of the state for why it used its perimetry on the particular individual and then the finding of the court. I do believe that that was proper. In addition to that, as the people stated, um, in its brief, the state didn't just give one good reason for choosing to use a perimetry on the individual. It listed several. Those included, um, age and awareness as well as prior experience of the person in a different trial. Those are completely legitimate reasons to not want someone on your jury, particularly when you start talking about someone's attentiveness, stories about jurors falling asleep or not paying attention during a trial and then having a mistrial are famous. Those air like law school 101. So, of course, that's a for why the state would not want this individual to be on the panel. Additionally, that goes to impressions and observations that were made during the process. We don't have the benefit of making those same observations that the trial court and the attorneys had at trial during the jury selection. And so for those reasons, we believe that the trial court properly ruled that the legitimate reason for removing that particular individual from the jury panel. Thank you, Counsel. Before we begin, uh, just McKinney or just escapes any final question. No further questions. No further questions. All right. Well, thank you, Counsel. Obviously, we will take the matter under advisement and we will meet you in order in due course.